**Jose Archie DIAZ, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

**No. 89–2144.**

United States Court of Appeals, Tenth Circuit.

March 14, 1990.

---

Gary J. Martone, Albuquerque, N.M., for plaintiff-appellant.

William Lutz, U.S. Atty. and Ronald Ross, Asst. U.S. Atty., Albuquerque, N.M., Gayla Fuller, Chief Counsel, Region VI, Karen Sharp, Principal Regional Counsel, Social Security Disability Litigation Branch, and Joseph B. Liken, Supervisory Lead Atty., Office of the General Counsel, U.S. Dept. of Health and Human Services, Dallas, Tex., for defendant-appellee.

Before SEYMOUR, TACHA, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Jose Archie Diaz appeals from the order of the district court declining to reverse the decision of the Secretary of Health and Human Services denying Diaz's request for Supplemental Security Income (SSI) benefits. Diaz contends on appeal (1) that the Secretary's decision is not supported by substantial evidence, (2) that the Secretary failed to meet his burden of proof in showing that Diaz had residual functional capacity and was capable of holding a sedentary job, and (3) that the Secretary erred in refusing to order a psychological examination. We affirm.

### I.

Diaz is an epileptic who suffers from petit mal seizures which occur, according to his testimony, approximately four to five times a month. In June 1985, Diaz suffered several seizures in one day, probably as a result of an inappropriate change in his medication. The seizures caused a minimal compression fracture of two or three thoracic vertebrae. Diaz also claims to suffer from pain, depression, and limited functional capacity.

Diaz requested SSI benefits on July 15, 1985. The request was denied on August 20, 1985. Diaz filed for reconsideration, which was also denied. Ultimately, a hearing before an ALJ was scheduled on May 5, 1986.

At the hearing the ALJ heard Diaz testify that he suffers from depression, is physically capable of sitting for only one-half hour, walking one-half mile, and lifting ten pounds. Diaz also testified that he has stomach problems due to tension and side effects from his seizure medications. The ALJ also heard from Diaz' sister, who testi-

fied as to Diaz' seizures and that he frequently appeared to be in pain and nervous. She also corroborated Diaz' testimony that occasionally he needed assistance getting in and out of bed and putting on shoes. Finally, the ALJ heard from a vocational expert, who evaluated Diaz' condition. The vocational expert testified that she believed that Diaz would be capable of holding a sedentary job based on his past job experience, current exertional and non-exertional impairments, and other testimony presented at the hearing and in the record.

The ALJ denied Diaz' request for SSI benefits, finding that Diaz was no longer able to perform his earlier job, but that his complaints about functional limitations were not supported by the record. In reaching this conclusion, the ALJ rejected the opinion of Diaz' treating physician, Dr. Novosad, and placed primary reliance on the opinions of consulting physicians, who had provided more detailed diagnoses, and on his observation that Diaz' testimony was less then credible. The ALJ also relied on the opinion of the vocational expert that Diaz retained residual functional capacity capable of undertaking sedentary work.

The Appeals Council declined to review the ALJ's decision. The ALJ's opinion thus became the final decision of the Secretary. Diaz filed for review of the Secretary's decision in district court, which denied his request. This appeal followed.

### II.

We will uphold decisions of the Secretary denying SSI benefits if that decision has substantial support in the record. *See Knipe v. Heckler*, 755 F.2d 141, 144–45 (10th Cir.1985). We agree with Diaz that where, as here, the Secretary determines that the applicant cannot return to his prior work activity, the Secretary bears the burden to prove that the applicant can find other employment in the economy. *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984).

In this case, the Secretary determined that Diaz could obtain sedentary employment, and thus denied Diaz's SSI applica-

tion. Because of the nature of Diaz's impairments, the Secretary rested his decision on evidence presented by a vocational expert and several consulting physicians. Diaz challenges the testimony. of the vocational expert, urging that the Secretary's reliance is misplaced because the ALJ failed to include Diaz's pain, headaches, blurred vision, poor control over epileptic seizures, and drug side effects in hypothethical questions. We disagree.

■ Initially, we note that the vocational expert revised her opinion of Diaz's functional capacity after listening to the hearing testimony, finding that Diaz was at most capable of sedentary, rather than medium or light work. This change in the vocational expert's testimony suggests that the expert was cognizant of Diaz's other impairments and that she was making an individualized assessment. The fact the vocational expert was present and heard testimony concerning Diaz's alleged impairments suggests that the effect of the error, if any, in the administrative law judge's (ALJ) hypothetical, was minimal.

■ Diaz's principal contention is that the Secretary improperly discounted the impairment due to his poorly controlled seizures. The Secretary discounted Diaz's claim because of his determination that Diaz was failing to follow the prescribed treatment. The Secretary relied on Social Security Ruling 84–27 in making this determination. Ruling 84–27 provides that where an applicant's blood medication levels are below therapeutic levels, there is a rebuttable presumption that the low levels are caused by the applicant's failure to follow the prescribed treatment regime. The Secretary found that Diaz had failed to rebut this presumption. No evidence was introduced to show that the non-therapeutic medication levels were organically caused. Diaz argues on appeal that the non-therapeutic levels were caused by failure of the treating physician to prescribe a sufficient dosage. The Secretary rejected this contention, however, because therapeutic lev-

els were obtained at the same dosage while Diaz resided in the hospital. This determination is supported by substantial evidence.

■ Diaz also challenges the Secretary's discounting of the impairments caused by headaches, pain, and blurred vision. The Secretary did, however, consider these factors. The Secretary discounted their significance, however, because of the lack of objective corroborative evidence. *See Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). Diaz presented little or no objective evidence in support of these claims. We cannot say that the Secretary's action is unsupported by substantial evidence.

■ Diaz also contests the Secretary's disregard of the alleged side effects from the medication. The Secretary determined, however, that the side effects occurred either at a time when Diaz was not under proper medication or when Diaz was on Depakene, a treatment period that lasted only two months, and which is now discontinued. The Secretary's determination is supported by substantial evidence.

■ The Secretary also discounted the seriousness of Diaz's non-exertional impairments because he determined that Diaz's credibility was suspect. The Secretary noted that Diaz's statements about the frequency of seizures varied, that his representations about lifting capacity ranged from 10 to 25 pounds at different times. The Secretary also noted that one of the consulting physicians had suspected Diaz of "malingering." Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. We find no error in the Secretary's treatment of Diaz's non-exertional claims.

Diaz contends that the Secretary incorrectly underweighted the testimony of Diaz's treating physician, Dr. Novosad. The Secretary gave adequate reasons for giving greater weight to the testimony of the consulting physicians.[1] *See Byron v.*

1. We note that the Secretary also declined to give full weight to the treating physician's opinion because of fears that the "family doctor" would act as an advocate. As we have repeatedly stressed, such fears are not a legitimate reason for discounting the treating physician's rec-

*Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984). We find no error in the Secretary's determination.

■ Finally, Diaz challenges the Secretary's failure to order a consultative examination of Diaz's depression. We find no error. The Secretary has broad latitude in ordering a consultative examination. In this situation, Diaz presented no objective evidence supporting the conclusion that he suffers from depression. In fact, Diaz's own treating physician, Dr. Novosad, stated that the depression was due to difficulties in bringing Diaz's seizures under control. In this situation, where the depression is not separable from the applicant's other non-exertional impairments, we cannot say the Secretary erred in refusing to order the examination.

### III.

For the foregoing reasons, the judgment of the district court upholding the decision of the Secretary denying benefits is AFFIRMED.

ommendations. *See Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir.1987).

